This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-41819

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**SHAWN P. MARLAR,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SOCORRO COUNTY**
**Roscoe A. Woods, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Tyler Sciara, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mallory E. Hardwood, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}** Defendant appeals the district court's denial of his motion to suppress. This Court issued a notice of proposed summary disposition proposing to affirm, to which Defendant responded with a memorandum in opposition. Upon consideration of Defendant's memorandum in opposition, we issued a second notice of proposed summary disposition proposing reversal. In response to this Court's second proposed disposition, the State filed a memorandum in opposition. After due consideration, we

remain unpersuaded that our second proposed disposition was incorrect, and for the reasons that follow, we reverse.

**{2}**     Our second proposed disposition applied the principles set forth by our Supreme Court in *State v. Santiago*, 2010-NMSC-018, 148 N.M. 144, 231 P.3d 600, and proposed to conclude that the district court's conclusion was contrary to the principles stated in *Santiago* and that the district court's findings were not supported by substantial evidence. [SCN 2-4] *See id.* ¶ 22. In response, the State's memorandum in opposition asks that we affirm the district court's order denying Defendant's motion to suppress, asserting that the district court's findings were supported by substantial evidence and that the special concerns associated with nighttime searches were not implicated in this case. [2nd MIO 4] Alternatively, the State asks that we remand with instructions to the district court to hold an evidentiary hearing regarding when the issuing judge expected the search warrant to be executed. [2nd MIO 4]

**{3}**     As part of its assertion that the district court's judge's findings were supported by substantial evidence, the State contends that a nighttime search was "implicitly authorized." [2nd MIO 4-5] Specifically, the State relies on *State v. Katrina G.*, 2008-NMCA-069, 144 N.M. 205, 185 P.3d 376, *overruled on other grounds by City of Santa Fe v. Marquez*, 2012-NMSC-031, 285 P.3d 637, as support for its assertion that authorization for a nighttime search "may be implicit and inferred from the context of the request." [2nd MIO 5] In *Katrina G.*, the warrant at issue lacked explicit authorization for a nighttime search. According to the authorizing judge's testimony, given during an evidentiary hearing, the judge "expected and anticipated" that the warrant would be executed at nighttime. *Id.* ¶ 24 (internal quotation marks omitted). Based on that testimony, the *Katrina G.* court adopted a case-by-case approach to allowing after-the-fact testimony in support of nighttime searches:

> Nothing in our jurisprudence . . . precludes in all cases the after-the-fact testimony of a magistrate judge to support the reasonableness of a nighttime search by showing that the judge actually performed the required scrutiny and evaluation and authorized the nighttime search although the warrant itself failed to expressly show the authorization. We see no reason to adopt such a bright-line preclusive rule. . . . We think it best to approach the issue on a case-by-case basis.

*Id.* ¶ 24. Accordingly, *Katrina G.* affirmed the denial of the motion to suppress, concluding that the trial court was not required to grant suppression "based solely on the face of the warrant," *id.* ¶ 28, and reasoning that the individuals involved were being held at the police station, thereby negating any concerns regarding privacy, security, or danger relevant to nighttime searches, *id.* ¶ 27.

**{4}**     The State's reliance on *Katrina G.* is unpersuasive. Our Supreme Court in *Santiago* rejected *Katrina G.*'s conclusion that nighttime searches may be implicitly authorized even if there is no special permission "on the face of the warrant," *Santiago*, 2010-NMSC-018, ¶ 15, allowing a nighttime search. *Compare Katrina G.*, 2008-NMCA-

069, ¶ 28 (holding that, given the need for an evidentiary hearing, the trial court was not required to grant suppression "based solely on the face of the warrant"), *with Santiago*, 2010-NMSC-018, ¶ 15 (interpreting Rule 5-211(B) NMRA as "requir[ing] law enforcement officers to show reasonable cause and obtain special permission *on the face of the warrant*" and "[a]bsent special permission, the police must wait until morning to conduct their search" (emphasis added) (internal quotation marks omitted). Moreover, our Supreme Court has rejected *Katrina G.*'s case-by-case approach. In *Santiago*, the Court explicitly rejected "after-the-fact justifications," including "substantial compliance," in determining whether Rule 5-211(B) has been met. *Santiago*, 2010-NMSC-018, ¶ 22. Rule 5-211(B) establishes a "bright-line rule where police do not initially serve a search warrant or enter the premises until after 10:00 p.m.," and *Santiago* emphasized that "[w]ithout special written permission, the fruits of those searches will be suppressed." 2010-NMSC-018, ¶ 22. Though clerical error, like the district court found in this case, was not one of the exceptions explicitly rejected in *Santiago*, the after-the-fact justification for a nighttime search that occurred in this case is nevertheless a violation of the bright-line rule set forth therein. *Id.*

**{5}** Turning to the State's assertion regarding substantial evidence, we note that the district court judge who denied Defendant's motion to suppress was the same judge who authorized the warrant in this case. [2nd MIO 7] The State insists that the judge therefore did not need testimony to support its factual findings, having written "to its firsthand knowledge of its own process in approving the search warrant." [2nd MIO 7] We are not persuaded. The State has not identified anywhere in the record where the district court judge issued a definitive statement regarding the judge's recollection of, or intention during, the issuance of the warrant in this case. *See Katrina G.*, 2008-NMCA-069, ¶ 25 (recounting the authorizing judge's testimony that a specific question was asked and describing the expectation that arose as a result of the answer received). Rather, the State points to the district court's finding that "the reviewing district court judge appeared to have authorized a nighttime search" as evidence of the judge's firsthand knowledge. [RP 128] We note, however, that in actuality, the district court found: "[t]he deputies who executed the search warrant relied upon the fact that the affiant applied for a nighttime search and the reviewing court judge appeared to have authorized a nighttime search." [Id. # 7] In this context, the finding is actually relevant to the nontestifying deputies' frame of mind in executing the warrant.

**{6}** Furthermore, as discussed in our second proposed disposition, the district court's findings encompass the understanding of nontestifying individuals, including the deputies who executed the warrant, the affiant, and the prosecutor. [RP 82, 128] The State has not identified any evidence that supports those findings. Accordingly, those findings are not based on testimony or evidence in the record and are therefore without substantial evidence to support them. [SCN 4] *See State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (internal quotation marks and citation omitted)); *State v. Mondragon*, 1988-NMCA-027, ¶ 10, 107 N.M. 421, 759 P.2d 1003 ("A party responding to a summary calendar notice must come forward and specifically point out errors of law and fact."), *superseded by*

*statute on other grounds as stated in State v. Harris*, 2013-NMCA-031, ¶ 3, 297 P.3d 374.

**{7}** Next, the State asserts that the constitutionality of a nighttime search depends on whether the "special concerns" associated with nighttime searches are implicated. [2nd MIO 8] According to the State, *Santiago* stands for the proposition that when special concerns raised by nighttime searches are not implicated, a nighttime search is not unconstitutional. [Id.] We disagree. In *Santiago*, the Court did not assess the concerns associated with nighttime searches because law enforcement had already entered the home and maintained a continuing presence at the house throughout the afternoon and evening—thereby effectively removing it from the realm of nighttime searches at all. 2010-NMSC-018, ¶ 24; *see id.* ¶ 19 (recognizing that application of Rule 5-211(B) "focus[es] on the substance of *when* the police first breached the privacy of the household").

**{8}** The State also suggests that because the warrant authorized a search of Defendant's vehicle rather than his home, this is a case in which, "as a matter of demonstrable fact, [law enforcement's] search would *not* be abrasive, dangerous, or confrontational." [2nd MIO 9] In making this assertion, the State appears to assert that this case falls outside *Santiago*'s interpretation of Rule 5-211(B)'s applicability. [2nd MIO 3] While the State correctly points out that the warrant in this case authorized a search of Defendant's vehicle instead of his home, we note that the warrant affidavit described nighttime controlled buys from Defendant in Defendant's car. [RP 61-62] The State has therefore failed to identify facts in the record that amount to a "factual[] guarantee that no one [was] on the premises" [2nd MIO 10] or that "the potential for dangerous or offensive interaction[s] between police and citizen" [2nd MIO 9] were removed by virtue of the warrant authorizing a search of Defendant's vehicle rather than his home. *See Santiago*, 2010-NMSC-018, ¶ 15. Accordingly, we are unpersuaded by the State's assertion.

**{9}** As a final matter, we decline the State's request to remand for an evidentiary hearing so that the district court may make findings of fact—regarding whether the judge was aware that the warrant form was outdated and whether the judge expected that the warrant would be executed at night—and may determine whether the nighttime warrant was "subject to the required scrutiny, evaluation, and authorization." [2nd MIO 3, 10] *Cf. State v. Pate*, 2023-NMCA-088, ¶ 28, 538 P.3d 450 (declining a litigant's request to remand for an evidentiary hearing in order to "develop a record [they] currently lack[] in order to support a claim he has raised"). As discussed above and in our second proposed disposition, those matters were already raised in the pleadings, determined by the district court, and litigated in this appeal. [SCN 3-4; RP 50, 61, 81, 127]

**{10}** For the reasons stated in our second notice of proposed disposition and herein, we reverse.

**{11}  IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**GERALD E. BACA, Judge**